1    *Counsel listed on last page*

2

3

4                    UNITED STATES DISTRICT COURT

5                   NORTHERN DISTRICT OF CALIFORNIA

6                          OAKLAND DIVISION

7

8    YODLEE, INC.,
                                          Case No. C06-07222 SBA
9              Plaintiff,
                                          **JOINT CLAIM CONSTRUCTION
10        v.                              STATEMENT PURSUANT TO
                                          PATENT LOCAL RULE 4-3**
11   ABLAISE LTD. and GENERAL INVENTIONS
     INSTITUTE A, INC.,
12
               Defendants.
13
     FINANCIAL FUSION, INC.               **RELATED CASE**
14
               Plaintiff,                 Case No. C06-02451 SBA
15
          v.
16
     ABLAISE LTD., and GENERAL INVENTORS
17   INSTITUTE A, INC.

18             Defendants.
19   ABLAISE LTD. and GENERAL INVENTIONS   **RELATED CASE**
     INSTITUTE A, INC.,
20                                         Case No. C06-001995 SBA
               Plaintiffs,
21
          v.
22
     BANK OF AMERICA CORPORATION,
23
               Defendant.
24
25   / / /

26   / / /

27   / / /

28
                               1

1    Pursuant to Patent Local Rule 4-3 and the Court's Scheduling Order of September 20,

2    2007, the Parties[1] hereby submit this Joint Claim Construction and Prehearing Statement in

3    compliance with Patent Local Rule 4-3.  The Parties expressly reserve the right to modify this

4    Joint Claim Construction Statement should the Court issue any relevant rulings impacting claim

5    construction between now and the Markman hearing currently scheduled for May 28, 2008.

6    **A.  Construction of Claim Terms On Which the Parties Agree**

7    **U.S. Patent No. 6,961,737 B2.**

8    Pursuant to Patent Local Rule 4.3(a), the Parties identify the following claim terms from

9    U.S. Patent No. 6,961,737 B2 ("the '737 Patent") on which they agree.

- function
- request for specified content data

| Claim Language | Joint Proposed Construction |
|---|---|
| function | identifiable set of computer instructions |
| request for specified content data | requires no construction |

**B.  Proposed Construction of Claim Terms On Which the Parties Disagree**

**U.S. Patent No. 6,961,737 B2.**

Pursuant to Patent Local Rule 4.3(b), the Parties identify the following claim terms from

the '737 Patent on which they disagree.

- format identifier
- user identifier
- type of formatting required
- formatting data
- in response to identifying a request for specified content data and a user identifier
- selecting a set of stored functions in dependence upon a received format identifier and said read user information

---

[1]  As referred to herein, "Parties" refers collectively to Yodlee, Inc. ("Yodlee"); Bank of America Corp. ("BofA"); Financial Fusion, Inc. ("FFI"); Ablaise Ltd. ("Ablaise"); and General Inventions Institute A, Inc. ("GIIA").

2

**Proposed Constructions:**

These proposed constructions are based on positions taken by the Parties to date and the information that is reasonably available at this stage of discovery. The Parties reserve the right to supplement and amend these constructions as they meet and confer, as they conduct discovery, as additional materials and information become available or known, and/or as appropriate under the Patent Local Rules and the Federal Rules of Civil Procedure. Yodlee, FFI, and BofA believe by listing a construction for any term, phrase, or clause below, the Parties do not concede that any such term, phrase, or clause fulfills the requirements of 35 U.S.C. § 112.

Ablaise and GIIA believe that Yodlee, FFI, and BofA were required to state any grounds for invalidity based on 35 U.S.C. § 112 pursuant to Local Rule 3.3(d), that each party's position on the issue is not impacted by discovery, and that by proposing a construction of a disputed claim term, each agrees such term is amenable to construction.

| Claim Language | Ablaise's and GIIA's Proposed Construction | Yodlee's, FFI's, and BofA's Proposed Construction |
|---|---|---|
| format identifier | requires no construction | element of data identifying HTML tags specifying the location of text and/or graphics on a page |
| user identifier | requires no construction | element of data identifying a particular user, which element is distinct and separate from the format identifier |
| type of formatting/ type of formatting required[2] | type of formatting means a layout or presentation of text and/or graphics on a page<br><br>Ablaise and GIIA do not believe the term "required" requires construction. | type of formatting required means an arrangement whereby two different clients requesting the same content data from the same server may receive differently formatted versions of the same content data depending upon a particular format identifier |

---

[2]   Yodlee, FFI, and BofA do not dispute Ablaise's proposed construction of the term "type of formatting" as meaning "a layout or presentation of text and/or graphics on a page." Indeed, Yodlee, FFI, and BofA do not seek to have that term separately construed. Rather, Yodlee, FFI, and BofA seek construction of the larger phrase "type of formatting *required.*" Ablaise and GIIA do not believe the term "required" requires construction.

3

| formatting data | markup language, such as HTML, that specifies the location of text and/or graphics on a page | HTML tags, each of which specifies the location of text and/or graphics on a page |
|---|---|---|
| in response to identifying a request for specified content data and a user identifier | does not require construction | wherein substeps (a) - (e) are based on the identification of both a request for specified content data and a user identifier |
| selecting a set of stored functions in dependence upon a received format identifier and said read user information | selecting one or more functions based upon a received format identifier and said read user information | different stored functions are selected for different types of formatting |

At this time, Ablaise and GIIA intend to rely on the following evidence in support of their proposed constructions:

- The language of the independent and dependent claims of the '737 Patent.
- The specification of the '737 Patent, including the abstract and figures contained therein.
- The prosecution history of the '737 Patent and all prior art disclosed therein.
- Prior art produced in this lawsuit in connection with the Preliminary Invalidity Contentions.
- Extrinsic evidence, including pleadings from *Dow Jones & Co. v. Ablaise Ltd.*, Case No. 1:06-CV-01014 (D.D.C.), and dictionary definitions of relevant claim language.
- Expert Testimony

The following table provides examples of the evidence upon which Ablaise and GIIA intend to rely to support their proposed constructions.

| Term and Ablaise and GIIA's Proposed Construction | Evidence |
|---|---|
| format identifier:<br><br>Requires no construction - it means an identifier of format. | **Intrinsic Evidence**<br><br>"receiving format identifiers identifying the type of formatting required. . ." (Claim 1). |

4

| | |
|---|---|
| | "It is possible for the user to <u>identify</u> information to the system as a means of expressing user preferences. . . . Thus, it is possible for the user to specify preferences such that the system becomes more tailor-made and specific to that particular user." (Col. 16 ll. 39-41, 61-63.) |
| <u>user identifier:</u><br><br>Requires no construction – it means an identifier of a user | **Intrinsic Evidence**<br><br>"The URL will include an element identifying the data required, an element identifying the type of formatting required, information relating to the user and a check sum, so as to reject URLs corrupted during transmission." (Col. 14, ll 6-9.)<br><br>Similarly, a question is asked at step 1003 as to whether the user identification is valid. In order for this question to be answered, it is necessary for a call to be made to a user database which will return an indication as to whether the user can be identified from the database. If it is found that the user ID is not presently available from the database, routines may be called which enable a user to be treated as a new user and open an appropriate account while remaining on-line." (Col. 14, ll. 13-21.) |
| <u>type of formatting:</u><br><br>a layout or presentation of text and/or graphics on a page | **Intrinsic Evidence**<br><br>"formatting data which specifies locations of said text and/or graphics within a page." (Claim 1.)<br><br>**Extrinsic Evidence**<br><br><u>"The words 'type of formatting' in 'receiving format identifiers identifying the type of formatting required' mean a layout or presentation of text and/or graphics on a page."</u> (*Dow Jones* Markman Order, p.6) |
| <u>formatting data:</u><br><br>markup language, such as HTML, which specifies the location of text and/or graphics on a page | **Intrinsic Evidence**<br><br>"An example of a particular recommendation under which signals include commands executable by browsing clients is the 'hypertext mark-up language' . . ." (Col. 2, lines 66-67; Col. 3, lines 1-2)<br><br>"A method as in claim 1 wherein said viewable data is HTML (hypertext markup language) data, and said formatting data comprise of HTML tags." (Claim 3)<br><br>"A serving device as in claim 4 wherein said viewable data is HTML (hypertext markup language) data, and said formatting data comprise of HTML tags." (Claim 6) |

| | |
|---|---|
| | "formatting data which specifies location of said text and/or graphics within a page." (Col. 20, 11. 1- 2.)<br><br>"The content data, itself, comprises text and/or graphics and these are located within the page as specified by the formatting data. Independent claims 2, 14, 15, and 20 have been amended to make this even more clear." (Amendment, Dec. 16, 2003, at 14.)<br><br>**Extrinsic Evidence**<br><br>"Within the context of the claim, the plain and ordinary meaning of 'formatting data' is data used to create a type of formatting." (*Dow Jones* Markman Order, p. 8) |
| <u>in response to identifying a request for specified content data and a user identifier:</u><br><br>does not require construction | **Intrinsic Evidence**<br><br><u>in response to identifying a request for specified content data and a user identifier (Claim 1.)</u><br><br>**Extrinsic Evidence**<br><br><u>"The words 'request for specified content data' in the term 'in response to identifying a request for specified content data and a user identifier; (a) . . . (e) . . .' do not require construction.</u> The language is unambiguous within the context of the claim" (*Dow Jones* Markman Order, p. 3) |
| <u>selecting a set of stored functions in dependence upon a received format identifier and said read user information:</u><br><br>selecting one or more functions based upon a received format identifier and said read user information | **Intrinsic Evidence**<br><br>"when a particular call is made for formatting signals, in the form of an executable string of functions, the particular call identifies the index reference within the list of strings, resulting in the selected index being selected from the list and thereafter executed in combination with the referenced data." (Col. 13 ll. 53-56.)<br><br>**Extrinsic Evidence**<br><br><u>"The phrase 'selecting a set of stored functions in dependence upon a received format identifier and said read user information' means selecting one or more functions based upon a received format identifier and said read user information."</u> (*Dow Jones* Markman Order, p. 7)<br><br>a set is a "finite or infinite number of objects of any kind, of entities, or of concepts that have a given property or properties in common" (<u>IBM Dictionary of Computing</u>, 1994.)<br><br>a set is a "group of objects, usually having one or more |

6

| | |
|---|---|
| 1<br>2 | characteristics (properties) in common" (<u>Microsoft Computing Dictionary</u>, 1994.) |

At this time, Yodlee, FFI, and BofA intend to rely on the following evidence in support of their proposed constructions:

- The language of the independent and dependent claims of the '737 Patent.
- The specification of the '737 Patent, including the abstract and figures contained therein.
- The prosecution history of the '737 Patent and all prior art disclosed therein.
- Prior art produced in this lawsuit in connection with the Preliminary Invalidity Contentions.
- Extrinsic evidence, including pleadings from *Dow Jones & Co. v. Ablaise Ltd.*, Case No. 1:06-CV-01014 (D.D.C.), and dictionary definitions of relevant claim language.
- Expert Testimony.

The following table provides examples of the evidence upon which Yodlee, FFI, and BofA intend to rely to support their proposed constructions.

| Term and Yodlee's, FFI's and BofA's Proposed Construction | Evidence |
|---|---|
| <u>format identifier</u>:<br><br>element of data identifying HTML tags specifying the location of text and/or graphics on a page | **Intrinsic Evidence**<br><br>"receiving format identifiers identifying the type of formatting required. . ." (Claim 1).<br><br>"Once a request has been received, first signals are processed by the serving station which represent the human viewable data. Second signals are received which represent a selected display structure. These two signals are processed in order to produce an HTML output. . . the first signals and the second signals are processed to produce output signals in the form of client executable instructions which are then served as output signals suitable for execution by the requesting browser." (Col. 7, lines 23-33).<br><br>"The formatting functions are arranged to generate small portions of HTML code, such that the universal set of formatting functions is minimised [sic] and so that any required output page may be generated by stringing formatting functions together." (Col. 13, lines 3-7, 16-17). |

| | | |
|---|---|---|
| 1 | | "The formatting information for the URL will result in particular function strings being read from the string list store 1103. Thereafter, these functions are executed, with reference to the data identifiers, resulting in text data and graphics data being read from the respective databases 1104 and 1105. As the functions are executed, output HTML is written to the output HTML buffer 1102 and after an identified set of functions have been executed, the HTML stored in output 1102 is read, so as to supply the output HTML signals to the HTTP daemon 403." (Col. 15, line 65 - col. 16, line 7). |

"Applicant has described and claimed an arrangement whereby two different clients, requesting the same content from the same server may receive differently formatted versions of the same content data depending upon a particular format identifier received from each respective client at the server." (Amendment, Dec. 16, 2003, p. 13).

"[O]n receipt of a request for specified content data, a first set of functions is executed to generate selected content data with a first formatting data when a first format identifier is received, and a second set of functions is executed to generate the same selected content data but with a second formatting data when a second format identifier is received." (Amendment, Dec. 16, 2003, p. 13).

**Extrinsic Evidence**

"The format identifier has two purposes in the claim: it is used for "identifying the type of formatting required" and "selecting a set of stored functions." (*Dow Jones* Markman Order, p. 9).

"Thus different formatting based on either a format identifier or format identification type data is the key. Dynamically creating web pages with the same formatting for all users is not claimed." (Ablaise's Responsive *Markman* Brief, pg. 6).

| | | |
|---|---|---|
| | user identifier: | **Intrinsic Evidence** |
| | element of data identifying a particular user, which element is distinct and separate from the format identifier | "[A]nd in response to identifying a request for specified content data and a user identifier; (a) reading user preference information from said user database in response to a received user identifier. . . (c) receiving format identifiers identifying the type of formatting required; (d) selecting a set of stored functions in dependence upon a received format identifier and said read user information. . ." (Claim 1). |

Fig. 10, nos. 1003 ["user ID valid?"], 1005 ["format identifier

8

| | | |
|---|---|---|
| 1 | | valid?"]. |
| 2 | | "The URL will include an element identifying the data required, an element identifying the type of formatting required, information relating to the user and a check sum. . ." (Col. 14, lines 3-6). |
| 3 | | |
| 4 | | |
| 5 | | "Similarly, a question is asked at step 1003 as to whether the user identification is valid. . . After the check sum has been validated and the user ID has been validated. . . an identifier for the formatting requested is validated at step 1005. . ." (Col. 14, lines 13-14, 31-32, 36-37). |
| 6 | | |
| 7 | | |
| 8 | | "[T]he HTML page or pages are generated at step 1006 with reference to the data identifier and the format identifier. Thereafter, with reference to the user ID, the pages are supplied back to the requesting browser via the network." (Col. 14, lines 42-46). |
| 9 | | |
| 10 | | |
| 11 | type of formatting required: | **Intrinsic Evidence** |
| 12 | | |
| 13 | an arrangement whereby two different clients requesting the same content data from the same server may receive differently formatted versions of the same content data depending upon a particular format identifier | "Applicant has described and claimed an arrangement whereby two different clients, requesting the same content from the same server may receive differently formatted versions of the same content data depending upon a particular format identifier received from each respective client at the server." (Amendment, Dec. 16, 2003, p. 13). |
| 14 | | |
| 15 | | |
| 16 | | |
| 17 | | "An (HTML) file is essentially an ASCII document interspersed with tags for formatting text and displaying images. The tags graphically represent instructions which are acted upon by a receivers browser, configured to render text or graphics. The browser has full control of how the page is displayed, therefore it is possible to generate a wide range of page layouts from a modest set of (HTML) tags." (Col. 3, lines 4-11). |
| 18 | | |
| 19 | | |
| 20 | | |
| 21 | | "[E]nvironments to facilitate the reception and conversion of HTML files are commonly known as "browsers". Thus, a browser is an application capable of interpreting and displaying documents received in HTML in such a way that the information is displayed to the user in a form compatible with the user's available equipment. . . In addition, the browser ensures that compatibility is achieved between the local system facilities and the transmitted data." (Col. 3, lines 18-24, 33-35). |
| 22 | | |
| 23 | | |
| 24 | | |
| 25 | | |
| 26 | | "[T]he first signals and the second signals are processed to produce output signals in the form of client executable instructions which are then served as output signals suitable for execution by the |
| 27 | | |
| 28 | | |

JOINT CLAIM CONSTRUCTIONS STATEMENT
PURSUANT TO PAT. L. R. 4-3
Case Nos. C 06 -07222 SBA, C06-01995 SB, Case No. C06-02451 SBAA

| | | |
|---|---|---|
| | | requesting browser. In this way, many pages of HTML encoded data may be produced automatically without requiring manual effort for each individual page. <u>Furthermore, pages may be tailored for specific user requirements</u> and, in some circumstances, it may be possible to adjust the extent to which this customization takes place in response to the clients own history of use, such that topics of interest are identified automatically and this identification is used in order to direct information of interest to the calling client." (Col. 7, lines 30-42).<br><br>"The URL will include an element identifying the data required, an element identifying <u>the type of formatting required</u>, information relating to the user and a check sum, so as to reject URLs corrupted during transmission." (Col. 14, lines 3-7).<br><br>**Extrinsic Evidence**<br><br>"The specification teaches that the format identifier directs the server to find and execute 'particular function strings,' each of which 'generate[s] a particular line of HTML code." HTML code, the specification explains, consists of text and graphics along with "tags" that instruct the browser how to format the text or display the graphics such that 'it is possible to generate a wide range of page layouts from a modest set of (HTML) tags.' The prosecution history further clarifies the relationship between the format identifier and the 'look' of the page. The applicants describe their claim as 'as arrangement whereby two different clients requesting the same content data from the same server may receive differently formatted versions of the same content data depending upon a particular format.'" (*Dow Jones* Markman Order, p. 8 (internal cites omitted)). |
| | <u>formatting data:</u><br><br>HTML tags, each of which specifies the location of text and/or graphics on a page | **Intrinsic Evidence**<br><br>"<u>[E]xecuting said set of functions to generate viewable data comprising</u> said selected content data and <u>formatting data</u>." (Claim 1).<br><br>"Serving station 212, as shown in FIG. 2, <u>serves files, processed in accordance with the established hypertext mark-up language (HTML) to browsing clients</u> via the Internet. . . Once a [client] request has been received, first signals are processed by the serving stations which represent the human viewable data. <u>Second signals are received which represent a selected display structure</u>. These two <u>signals are processed in order to produce an HTML output</u>." (Col. 7, lines 16-28). |

10

| | | |
|---|---|---|
| 1<br>2<br>3<br>4<br>5<br>6<br>7<br>8<br>9<br>10<br>11<br>12 | | "An (HTML) file is essentially an ASCII document interspersed with tags for formatting text and displaying images. The tags graphically represent instructions which are acted upon by a receivers browser, configured to render text or graphics. The browser has full control of how the page is displayed, therefore it is possible to generate a wide range of page layouts from a modest set of (HTML) tags." (Col. 3, lines 4-11).<br><br>**Extrinsic Evidence**<br><br>"The term 'formatting data' in the phrase 'executing said set of functions to generate viewable content comprising said selected content data and formatting data' means HTML tags, which specify the location of text and/or graphics on a page." (*Dow Jones* Markman Order, p. 10).<br><br>"Within the context of the claim, the plain and ordinary meaning of "formatting data" is data used to create a type of formatting. The specification teaches that this refers specifically to HTML tags." (*Dow Jones* Markman Order, p. 11). |
| 13<br>14<br>15<br>16<br>17<br>18<br>19<br>20<br>21<br>22<br>23<br>24<br>25<br>26 | <u>in response to identifying a request for specified content data and a user identifier</u>:<br><br>wherein substeps (a) - (e) are based on the identification of both a request for specified content data and a user identifier | **Intrinsic Evidence**<br><br>"After the data identifier and the format identifier have been validated at their respective steps, the HTML pages are generated at step 1006 with reference to the data identifier and the format identifier." (Col. 14, lines 40-46).<br><br>"Once a request has been received, first signals are processed by the serving station which represent the human viewable data. Second signals are received which represent a selected display structure. These two signals are processed in order to produce an HTML output. However, this processing step only takes place after the client request has been received such that the first signals and the second signals are processed to produce output signals in the form of client executable instructions which are then served as output signals suitable for execution by the requesting browser." (Col. 7, lines 23-33).<br><br>"[The claim] has been amended to make it clear that an HTML document is generated in response to the identification of a request for specified content data. Thus, the HTML document is generated and served to a browser on receipt of a request from that browser." (Amendment, Dec. 16, 2003, p. 16). |
| 27<br>28 | <u>selecting a set of stored functions in dependence upon a received format</u> | **Intrinsic Evidence**<br><br>"Thus, the input URL will identify particular types of formatting |

| identifier and said read user information:<br><br>different stored functions are selected for different types of formatting | and particular types of data. The formatting information for the URL will result in particular function strings being read from the string list store 1103. Thereafter, these functions are executed, with reference to the data identifiers, resulting in text data and graphics data being read from the respective databases 1104 and 1105." (Col. 15, line 63 - col. 16, line 2).<br><br>"Once a request has been received, first signals are processed by the serving station which represent the human viewable data. Second signals are received which represent a selected display structure. These two signals are processed in order to produce an HTML output. However, this processing step only takes place after the client request has been received such that the first signals and the second signals are processed to produce output signals in the form of client executable instructions which are then served as output signals suitable for execution by the requesting browser." (Col. 7, lines 23-33).<br><br>"Applicant has described and claimed an arrangement whereby two different clients, requesting the same content from the same server may receive differently formatted versions of the same content data depending upon a particular format identifier received from each respective client at the server." (Amendment, Dec. 16, 2003, p. 13). |
|---|---|

## U.S. Patent No. 6,295,530.

### 1.    Ablaise's and GIIA's Position

Ablaise and GIIA believe that the status of U.S. Patent No. 6,295,530 ("the '530 patent") is properly before the Court in Ablaise and GIIA's pending Motion for a Case Management Order. Because the '530 patent is presently still at issue in this litigation, however, Ablaise and GIIA believe it is appropriate that each party state its proposed claim construction for each disputed term pursuant to Local Rule 4-3. Accordingly, Ablaise and GIIA identify the following claim terms from which they contend require construction.

| Claim Language | Ablaise's and GIIA's Proposed Construction |
|---|---|
| formatting type identification data | data identifying a type of formatting. |

| formatting types of data | sets of markup language tags, such as HTML, that specifies the location of text and/or graphics on a page. |
| --- | --- |

At this time, Ablaise and GIIA intend to rely on the following evidence in support of their proposed constructions:

- The language of the independent and dependent claims of the '530 Patent.
- The specification of the '530 Patent, including the abstract and figures contained therein.
- The prosecution history of the '530 Patent and all prior art disclosed therein.
- Prior art produced in this lawsuit in connection with the Preliminary Invalidity Contentions.
- Extrinsic evidence, including pleadings from *Dow Jones & Co. v. Ablaise Ltd.*, Case No. 1:06-CV-01014 (D.D.C.), and dictionary definitions of relevant claim language.
- Expert Testimony.

The following table provides examples of the evidence upon which Ablaise and GIIA intend to rely to support their proposed constructions.

| Term and Ablaise and GIIA's Proposed Construction | Evidence |
| --- | --- |
| formatting type identification data:<br><br>data identifying a type of formatting. | **Intrinsic Evidence**<br><br>"The URL will include an element identifying the data required, an element identifying the type of formatting required, information relating to the user and a check sum, so as to reject URLs corrupted during transmission." (Col. 13, ll 60-64.)<br><br>"Thus, it is possible to adjust the relationship between indexes and strings, thereby adjusting the way in which the data is actually formatted in response to a particular request." (Col. 16 ll. 4-10.)<br><br>**Extrinsic Evidence**<br><br>"In the phrase 'identifying requests from browsing devices that define a request for specified viewable data, said request including formatting type identification data,' the term 'formatting type identification data' means data identifying a type of formatting." |

13

| | |
|---|---|
| | (*Dow Jones* Markman Order p. 12.) |
| <u>formatting types of data:</u><br><br>sets of markup language tags, such as HTML, that specifies the location of text and/or graphics on a page. | **Intrinsic Evidence**<br><br>"A method of serving output signals from a serving device to a plurality of browsing devices connected to a network, wherein said output signals represent HTML (hypertext mark-up language) data executable by a browsing device so as to display viewable data in accordance with a specified page format …. supplying output signals to the requesting browsing device derived from said hypertext mark-up language data; and in which said output signals represent hypertext mark-up language data executable by a browsing device so as to display said specific viewable data in accordance with a first specified page format when a first type of formatting data is selected and in a second specified page format when a second type for formatting data is selected." (Claim 2.)<br><br>A serving device for serving output signals to a plurality of browsing devices connected to a network, wherein said output signals represent HTML (hypertext mark-up language) data executable by a browsing device so as to display viewable data in accordance with a specified page format (Claim 12.)<br><br>"An example of a particular recommendation under which signals include commands executable by browsing clients is the 'hypertext mark-up language' . . ." (Col. 2, lines 66-67; Col. 3, lines 1-2)<br><br>The subsequent coding specifies the location of the icon within the page so as to complete the overall formatting requirements. (Col. 11, ll. 64-65.)<br><br>**Extrinsic Evidence**<br><br>"As in the '737 patent, formatting data refers to HTML tags, which are used to specify the location of text and/or graphics on the page." (*Dow Jones* Markman Order p. 13.) |

2.      **Yodlee's, FFI's, and BofA's Position**

To date, Ablaise and GIIA have not served any infringement contentions relating to the '530 patent. Therefore, Ablaise and GIIA have failed to comply with Patent L.R. 3-1, which requires any party claiming patent infringement to identify asserted claims and serve infringement contentions on all parties no later than 10 days after the Initial Case Management Conference. Yodlee, FFI, and BofA believe that the '530 patent should be dismissed from this case with

14

1  prejudice for at least this reason.  Yodlee, FFI, and BofA are in the process of preparing their

2  Opposition to Ablaise's Motion for a Case Management Order, which discusses in detail the bases

3  for their position that the '530 patent should be dismissed.[3]

4       In the event Ablaise and GIIA are allowed to raise infringement contentions relating to the

5  '530 patent, Yodlee, FFI, and BofA specifically reserve the right to identify claim terms for

6  construction, and to propose constructions for all identified claim terms, at the appropriate time.

7  **III.   Length of *Markman* Hearing**

8       The parties estimate that a *Markman* hearing will take four hours.  This duration will allow

9  time for attorney argument and any necessary technology tutorials.

10  **IV.   Witnesses**

11       The parties do not believe live witness testimony regarding claim construction is needed in

12  this case and as such do not intend to call any witnesses during the *Markman* hearing.

13  **V.   Additional Issues for a Prehearing Conference**

14       Currently, the Parties are unaware of any additional issues to be taken up at a prehearing

15  conference prior to the Claim Construction Hearing.  In the event that any such issues arise, the

16  affected parties will inform the Court and will propose dates for a prehearing conference.

17  By his signature below, David M. Barkan, Counsel for Plaintiff Yodlee, Inc. and Defendant Bank

18  of America Corporation attests that counsel for all parties concur in the filing of this Joint Claim

19  Construction Statement.

20  / / /

21  / / /

22  / / /

23

24

25

26

27

28

---

[3]  Yodlee's, FFI's, and Bank of America's Opposition is due and will be filed with the Court on or before February 26, 2008.

15

1    Dated:  February 25, 2008

2    By: */s/ David M. Barkan*
        David M. Barkan (CSB No. 160825
3       barkan@fr.com)
        Craig R. Compton (CSB No. 215491
4       compton@fr.com)
        Jonathan J. Lamberson (CSB No. 239107
5       lamberson@fr.com)
        Christina D. Jordan (CSB No. 245944
6       jordan@fr.com)
        FISH & RICHARDSON P.C.
7       500 Arguello Street, Suite 500
        Redwood City, CA 94063
8       Telephone: (650) 839-5070
        Facsimile: (650) 839-5071
9

       Attorneys for Plaintiffs, YODLEE, INC. and
10    Defendant BANK OF AMERICA CORP

11

12   Dated:  February 25, 2008

13   By: */s/ Cyrus A. Morton*
        Cyrus A. Morton (Admitted *Pro Hac Vice*
14      camorton@rkmc.com)
        Patrick M. Arenz (Admitted Pro Hac Vice
15      pmarenz@rkmc.com)
        Ronald J. Schutz (Admitted Pro Hac Vice
16      rjschutz@rkmc.com)
        Jake M. Holdreith (Admitted Pro Hac Vice
17      jmholdreith@rkmc.com)
        ROBINS, KAPLAN, MILLER & CIRESI
18      LLP
        2800 LaSalle Plaza
19      800 LaSalle Avenue
        Minneapolis, MN  55402-2015
20      Telephone:  (612) 349-8500
        Facsimile:  (612) 339-4181
21

       Attorneys for Defendants/Plaintiffs ABLAISE,
22    LTD. and GENERAL INVENTIONS
        INSTITUTE A, INC.
23

24
       50467055.doc
25

26

27

28

---

Dated:  February 25, 2008

By: */s/ Linda J. Thayer*
     Linda J. Thayer (CSB No. 195115
     Linda.thayer@finnegan.com)
     Gerald F. Ivey (Admitted Pro Hac Vice
     gerald.ivey@finnegan.com)
     Lily Lim (CSB No. 214536
     lily.lim@finnegan.com)
     Jeffrey E. Danley (CSB No. 238316
     jeff.danley@finnegan.com)
     FINNEGAN, HENDERSON,
     FARABOW,GARRETT & DUNNER, LLP
     Stanford Research Park
     3300 Hillview Avenue
     Palo Alto, California  94304-1203
     Telephone: (650) 849-6600
     Facsimile: (650) 849-6666

Attorneys for Plaintiff, FINANCIAL FUSION, INC.

Dated:  February 25, 2008

By: */s/ Martin L. Fineman*
     Martin L. Fineman (CSB No. 104413
     martinfineman@dwt.com)
     DAVIS WRIGHT TREMAINE LLP
     505 Montgomery Street, Suite 800
     San Francisco, CA 94111
     Telephone:  (415) 276-6500
     Facsimile:  (415) 276-6599

Attorneys for Defendants/Plaintiffs ABLAISE, LTD. and GENERAL INVENTIONS INSTITUTE A, INC.

1

## PROOF OF SERVICE

2      I am employed in the County of San Mateo. My business address is Fish & Richardson
P.C., 500 Arguello Street, Suite 500, Redwood City, California 94063.  I am over the age of 18

3   and not a party to the foregoing action.

4      I am readily familiar with the business practice at my place of business for collection and
processing of correspondence for personal delivery, for mailing with United States Postal Service,

5   for facsimile, and for overnight delivery by Federal Express, Express Mail, or other overnight
service.

6
7      On February 25, 2008, I caused a copy of the following document(s):

8      **YODLEE, INC.'S PROPOSED CLAIM CONSTRUCTION CONSTRUCTION
STATEMENT PURUSANT TO PATENT LOCAL RULES 4-3**

9   to be served on the interested parties in this action by placing a true and correct copy thereof,
enclosed in a sealed envelope, and addressed as follows:

10
11   Martin L. Fineman                       Attorneys for Defendants/Plaintiffs
Davis Wright Tremaine LLP                ABLAISE LTD and GENERAL

12   505 Montgomery Street, Suite 800         INVENTIONS INSTITUTE A, INC.
San Francisco, CA 94111

13   Telephone:  (415) 276-6500
Facsimile:  (415) 276-6599

14   Patrick M. Arenz                        Attorneys for Defendants/Plaintiffs
Ronald J. Schutz                         ABLAISE LTD and GENERAL

15   Jake M. Holdreith                       INVENTIONS INSTITUTE A, INC.
Cyrus A. Morton

16   Robins, Kaplan, □illar & Ciresi L.L.P.
2800 LaSalle Plaza

17   800 LaSalle Avenue
Minneapolis, MN  55402-2015

18   Telephone:  (612) 349-8500
Facsimile:  (612) 339-4181

19
20   | XX | **ELECTRONIC MAIL:** | The document was transmitted by electronic mail to the addressees' email addresses as stated above. |

21   | XX | **FEDERAL EXPRESS:** | The document was deposited on the same day in the ordinary course of business with a facility regularly maintained by Federal Express. |

22

23      I declare that I am employed in the office of a member of the bar of this Court at whose
direction the service was made.

24
25      I declare under penalty of perjury that the above is true and correct.  Executed on
February 25, 2008, at Redwood City, California.

26
_____

27                    Cheryl Marchesi-Sherwood

28   50467055.doc

17